IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| OSVALDO TRIPODI,<br><br>    Plaintiff,<br><br>vs.<br><br>MICROCULTURE, INC., and MacCLAREN GIBLETTE,<br><br>    Defendants. | MEMORANDUM DECISION AND ORDER DENYING IN PART, AND GRANTING IN PART, DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; AND DENYING PLAINTIFF'S MOTIONS TO STRIKE<br><br>Case No. 2:04-CV-194 TS |

I.  INTRODUCTION

This matter is before the court on Defendants' Motion for Summary Judgment, Plaintiff's Motion for Partial Summary Judgment, and Plaintiff's Motions to Strike.   Plaintiff brings a claim under the Fair Labor Standard Act (FLSA) against his former employer, Defendant Microculture, Inc. (Microculture), and its owner, Defendant MacClaren Giblette (Giblette).  Plaintiff also brings a claim under state law for reimbursement for gasoline expenses of $7,800.  The court will grant

1

Defendants' Motion for Summary Judgment, in part, on the FLSA claim, and deny it in part. The court will deny Plaintiff's Motion for Partial Summary Judgment. Finally, the court will deny Plaintiff's Motions to Strike as moot.

## II. UNDISPUTED FACTS

Plaintiff is a microbiologist. He has worked for Microculture since 1995. Defendant MacClaren owns all of Microculture's stock. Microculture is a small microbiology lab. It employed one part-time lab director and two full-time microbiologists--Plaintiff and Defendant MacClaren. Since its inception, Microculture has had gross revenues of less than $500,000 per year.

Microculture's business consists of reading cultures of microorganisms taken in doctors' offices. Microculture competes against larger labs by providing a service where its microbiologists travel to the doctors' offices to examine cultures prepared there by the doctors' nurses who had been trained by Microculture. Its microbiologists read the prepared cultures at the doctors' offices, offer a preliminary opinion and then take the cultures back to its lab to complete inspection and testing. All of these activities take place within the State of Utah. It sells no products and provides no services outside the State of Utah.

Plaintiff's duties during the three years prior to filing his Complaint included opening the mail to see if there were checks. He would fill out a deposit slip and deposit the checks at a bank located in Utah.

Plaintiff has never mailed any packages or letters outside the State of Utah as part of his work for Microculture. Pl.'s Dep. at 35.

Plaintiff testified in his deposition that the dishes or plates used in business were obtained from a location near Interstate 15 in Utah. Pl.'s Dep. at 19-20. However, he also testified that perhaps "one time a week" he called a California company that is the "central office for plates" regarding new plates. Pl.'s Dep. at 34. Although Plaintiff's testimony is ambiguous, it appears to conflict with his testimony that the plates are obtained from a Utah location, in that it suggests that he orders plates from California.

Microculture operates under federal regulations. Those regulations are administered in Utah by the Utah Department of Health. Approximately once every four months, a company on behalf of the Utah Department of Health, sends Microculture a series of unknown organisms to identify. MacClaren Dep. at 27-28; Pl.'s Dep. at 35. The plates used for this testing apparently come from California and are returned to California. . Other than those test plates for the tests on behalf of the State of Utah's regulatory agency, no plates were ever sent to Microculture from outside of the state for examination. *Id.* at 16-17.

When there is billing directly to an insurance company, Defendant MacClaren handles it though a billing company hired by Microculture. Plaintiff fills out information on insurance forms and delivers billing sheets and insurance forms to various employees of the billing company, all of whom are located in Utah. Pl.'s Dep. at 25, 41-42.

### III.   CONCLUSIONS AND DISCUSSION

    A.    Standard for Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, we examine the factual record and draw reasonable inferences therefrom in the light most favorable to the nonmoving party.

*Clinger v. New Mexico Highlands Univ. Bd. of Regents*, 215 F.3d 1162, 1165 (10th Cir. 2000) (internal quotation marks and citation omitted).

> The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. In so doing, a movant that will not bear the burden of persuasion at trial need not negate the nonmovant's claim. Such <u>a movant may make its prima facie demonstration simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim</u>.
>
> If the movant carries this initial burden, the nonmovant that would bear the burden of persuasion at trial may not simply rest upon its pleadings; <u>the burden shifts to the nonmovant to go beyond the pleadings and "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant</u>. Fed. R. Civ. P. 56(e). To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein.

*Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (internal citations omitted) (emphasis added).

    B.    Defendants' Motion for Summary Judgment

Defendants move for summary judgment on the FLSA claim on the grounds that (1) Microculture is not covered by the FLSA, and (2) Plaintiff is exempt from FLSA coverage because he is employed in either an administrative or a professional employee.

4

Plaintiff opposes summary judgment on the grounds that Defendants' position raises unpled affirmative defenses that were waived. In addition, Plaintiff contends that he was neither an administrative nor a professional employee.

Coverage under the overtime provisions of the FLSA exists:

> if <u>either</u> the employee is engaged in commerce (individual coverage), 29 U.S.C. § 203(b) (defining "commerce" as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof"), <u>or</u> the employer is an enterprise engaged in commerce (enterprise coverage), 29 U.S.C. § 203(s) (defining "enterprise engaged in commerce" as enterprises that, inter alia, have annual gross revenue of $500,000 or greater).

*Chao v. A-One Medical Services, Inc*,. 346 F.3d 908, 914 (9th Cir. 2003) (emphasis added).

> The FLSA prohibits an "employer" from employing "employees" who are "engaged in commerce" or "employed in an enterprise engaged in commerce" without compensating the employees at a rate of at least one and one-half times their regular rate for the hours worked in excess of forty hours per week. 29 U.S.C. § 207(a)(1).

*Chao v. Rivendell Woods, Inc*., __ F.3d __, 2005 WL 1669389, *1 (4th Cir. 2005) (holding that the complaint stated a claim under the FLSA where it alleged that parties were an employer and employees within meaning of act <u>and</u> that the defendant/employer's operation "constitutes an enterprise engaged in commerce . . . within the meaning of . . . the Act").

> The FLSA defines an enterprise engaged in commerce or in the production of goods for commerce as one that "(a)(i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; <u>and</u> (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000...." 29 U.S.C. § 203(s)(1).

*Figueroa v. America's Custom Brokers, Inc.*, 48 F.Supp.2d 1372, 1376 (S.D. Fla. 1999) (emphasis added).

5

In the present case, the evidence is undisputed that Microculture's annual gross volume of sales is less than $500,000. Thus, because Defendants grossed less than $500,000 per year, whether they engaged in commerce or had employees engaged in commerce is not relevant, because Defendants do not otherwise meet the definition of an enterprise engaged in commerce. However, the FLSA covers employees both through their employers and individually. *A-One Medical Services, supra*, 346 F.3d at 914. Therefore, in order to make a prima facie case under the FLSA, Plaintiff must show that he is "engaged in commerce."[1]

As an initial matter, Plaintiff contends that this issue is an affirmative defense that was waived under Fed. R. Civ. P. 8(c) because it was not raised in the Answer. Thus, resolution of this Motion turns first on whether the fact of an employee being "engaged in commerce" is an element of Plaintiff's claim under the FLSA, or is an affirmative defense under the FLSA.

> Generally, a plaintiff suing under the FLSA carries the burden of proving all elements of his or her claim. In a suit for the payment of overtime wages, the employer claiming that the suing employee is exempt from the overtime requirement has the burden of proving that the employee falls within the claimed exempted category.

*Samson v. Apollo Resources, Inc.*, 242 F.3d 629, 636 (5th Cir. 2001).

To establish a claim under § 207 of the FLSA, Plaintiff must show that he has been employed longer than forty hours in a workweek and one of the following: (a) that plaintiff was engaged in commerce; (b) that plaintiff was engaged in the production of goods for commerce; or (c) that plaintiff was employed in an enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. § 207. Accordingly, the court holds that being an employee "engaged in

---

[1] The court notes that Plaintiff does not allege that he was engaged in the production of goods for commerce.

6

commerce" is an element of Plaintiff's claim under the § 207 of the FLSA. As noted, Plaintiff has the burden of establishing all of the elements of his claim under § 207 that he is entitled to unpaid overtime compensation. If Plaintiff does so, an employer may raise affirmative defenses such as that the particular employee is exempt. The exemptions from § 207 are found at § 213 of the FLSA, including the exemptions for an employee who is employed in a bona fide "administrative" or a "professional" capacity. 29 U.S.C. §213(a)(1) ("The provisions of . . . section 207 of this title shall not apply with respect to– any employee employed in a bona fide . . . executive, or professional capacity . . .").

Defendants have submitted uncontroverted evidence that Microculture grosses less than $500,000 a year for the three years at issue. Accordingly, regardless of whether it has employees engaged in commerce, it is not an "enterprise engaged in commerce" within the meaning of § 207 and Defendants are entitled to summary judgment on that issue.

Therefore, to show coverage under § 207 of the FLSA, Plaintiff must show that *he* was engaged in commerce during each relevant work week. §207(a)(1). Contrary to Plaintiff's assertion, such a fact is an element of Plaintiff's claim, not an affirmative defense.

In this case, Defendants met their burden for summary judgment on the § 207 claim by pointing out the absence of any evidence. The burden then shifted to Plaintiff, who bears the burden at trial of establishing the § 207 elements. "The question whether an employee is engaged 'in commerce' within the meaning of the [FLSA] is determined by practical considerations, not by technical conceptions." *Mitchell v. C.W. Vollmer & Co.*, 349 U.S. 427, 429 (1955).

The only evidence Plaintiff has produced that supports his assertion that he was engaged in commerce is his testimony that once a week he called a California company about plates. As noted, that testimony is contradicted by his own testimony that the plates were obtained from a Utah location.

Plaintiff argues that his position is supported by his testimony of the following: he opened mail and, if there were any checks, he deposited them; he filled out insurance forms related to the services the company performed in Utah; and then delivered them to another company's employees in Utah. However, such evidence of his actions occurring in Utah do not show he was engaged in commerce within the meaning of § 207(a)(1) of the FLSA. *See* 29 U.S.C. § 203(b)(defining "commerce" for purposes of the FLSA as "trade, commerce, transportation, transmission, or communication amoung the several States or between any State and any place outside thereof."). The *Wirtz* case on which Plaintiff relies is distinguishable. In *Wirtz v. Welfare Finance Corp.*, 263 F.Supp. 229 (N.D. W.V. 1967) the employer was a multi-state finance company. Only one category of its employees, consisting of a single cashier-stenographer, was analyzed to determine if she individually engaged in commerce. The claims of the remainder of its employees were analyzed under the "enterprise engaged in commerce" theory. The cashier-stenographer worked in a branch office in a state other than the state where the home office was located. Her duties included preparing and mailing reports from the branch office to the home office, transmitting payments to the home office, and performing similar interstate transactions or communications. *Id*. at 234. In contrast, in the present case the Plaintiff did no mailing or transmitting out of state. The bank

deposits made by Plaintiff were for services performed in Utah and were deposited in Utah banks. The insurance forms were for services performed in Utah and were delivered to persons in Utah.

Plaintiff has shown that, as a business regulated or licenced by the State of Utah, the company participated in accreditation testing by receiving, evaluating, and returning cultures to a company acting on behalf of the State of Utah, but located in the State of California. The court does not find that such activity is engaging in commerce. More importantly, it is only Plaintiff's activities that are relevant to a determination on whether he is an employee "engaged in commerce." *Wirtz, supra*, 263 F.Supp. at 233 (holding that the facts supporting a claim that an employee is "engaged in commerce," within the meaning of § 207(a)(1) are "dependent upon his individual activities not the nature of the employer's business."). Plaintiff admits that he did not ship any packages or send any mail outside of Utah. Therefore, because Plaintiff himself did not mail or send the testing cultures, their transport is not relevant to whether *he* was engaged in commerce.

Defendants have not shown a lack of a material issue of fact on whether Plaintiff was an administrative employee who would be exempt from the FLSA under § 213(a)(1). Defendants have shown that during the time in question that there is no issue of fact on whether or not Plaintiff was a salaried employee--the evidence is that, except for bonuses, he received the same salary each week regardless of the hours he worked. However, there is an issue of fact as to his primary duty and, therefore, a material issue of fact as to whether Plaintiff is an administrative employee.

For the reasons stated below in connection with the Motion to Strike, the court will not address the issue of whether Plaintiff is a professional employee within the meaning of § 207(a)(1).

In conclusion, the court finds that Defendants have established that there are no material issues of fact and they are entitled to judgment as a matter of law that Defendants were not "engaged in commerce" within the meaning of § 207(a)(1). However, although it is close, Plaintiff has established an issue of fact on whether he was an employee engaged in commerce within the meaning of § 207(a)(1). Accordingly, the court will grant in part, and deny in part, Defendants' Motion for Summary Judgment.

  C. Plaintiff's Motion for Partial Summary Judgment

Plaintiff moves for partial summary judgment "striking defendants' affirmative defense that the individual defendant, . . . was not an employer of the plaintiff." Pl.'s Motion at 1. Defendants oppose the Motion because they contend that they are not subject to the FLSA because Microculture's gross sales were less than $500,000 and they are exempt from the FLSA because they engage in only intrastate, and not interstate, commerce.

Whether the individual Defendant is Plaintiff's "employer" within the meaning of the FLSA is not an affirmative defense. It is an element of Plaintiff's FLSA claim against that individual Defendant.

Further, Defendants are not correct in their contentions that they are not liable under the FLSA because their annual income is less than $500,000 and because they do not engage in interstate commerce. Those contentions, as discussed above, are relevant as to whether there is a claim under § 207(a)(1) based on the enterprise being engaged in commerce. However, those contentions are not dispositive to a claim based upon being an employee engaged in commerce as set forth in § 207(a)(1). Accordingly, the court will deny Plaintiff's Motion for Partial Summary Judgment.

D.     Plaintiff's Motions to Strike

Plaintiff's first Motion to Strike, filed on January 19, 2005, seeks to strike portions of Defendants' materials in support of their Motion for Summary Judgment that "raise the unpled affirmative defenses that the plaintiff was not engaged in commerce and/or that the plaintiff was exempt from [the FLSA] because he was a bona fide professional employee."

Plaintiff contends that the failure to timely plead these matters prejudiced him because he could not direct discovery to these issues.

Defendants oppose the Motion to Strike on the grounds that their general denial that the FLSA applied or that Plaintiff was covered by the FLSA is sufficient to raise the affirmative defense. They also argue on the merits that Plaintiff is clearly a professional employee and therefore it would be unduly harsh because there is no unfair surprise.

The court agrees that establishing an employee's exempt status under one of the exemptions set forth in § 213 of the FLSA is an affirmative defense which Defendants have the burden to prove. Because the employee's exempt status under the § 213 is an affirmative defense, it must be asserted at the pleading stage or it is waived. Fed. R. Civ. P. 8(c).

> Fed.R.Civ.P. 8(c) states that a defendant must plead a statute of limitations defense in its answer to the complaint. However, appellate courts are not inclined to find a technical failure to comply with Rule 8(c) fatal when the district court has chosen to recognize a belatedly asserted affirmative defense, so long as the record confirms that the plaintiff had adequate notice of the defense and was not deprived of the opportunity to respond. *Venters v. City of Delphi,* 123 F.3d 956, 968 (7th Cir.1997); *see also Camarillo v. McCarthy,* 998 F.2d 638, 639 (9th Cir.1993) ("In the absence of a showing of prejudice, however, an affirmative defense may be raised for the first time at summary judgment.").

*Ring v. Lexington Apartments & Motor Inns-Oklahoma*, 3 Fed.Appx. 847, 851 (10th Cir. 2001) (unpublished decision).

Defendants' position that Plaintiff knew that in 1998 he was admitted to this country and/or hired by Defendants on the basis that he had established he was a highly educated and qualified professional does not establish that Plaintiff had notice that Defendants would raise the "bona fide professional employee" defense in the present case. In addition to their general denial of coverage by the FLSA, Defendants' Answer specifically states, "Plaintiff was employed in either a bona fide executive or bona fide administrative capacity, as such terms have been defined and delimited in regulations adopted . . . and published in the Code of Federal Regulations, Title 29 Part 541, §§541.0-541.2." This statement did not inform Plaintiff that the bona fide professional employee defense would be raised. Similarly, Defendants' questions contained in their Interrogatories did not notify Plaintiff that the affirmative defense of a professional employee would be raised in addition to the defense that he was an executive employee because they were not clearly focused on the professional employee issue.

The court finds that neither the Defendants' general denials of coverage by the FLSA, nor any other matters cited by Defendants raised the professional employee issue sufficient to put Plaintiff on notice of Defendants' intent to rely on that particular affirmative defense. The professional employee defense was first raised in Defendants' Motion for Summary Judgment filed on December 15, 2004, subsequent to the close of fact discovery on November 15, 2004. The court finds that Plaintiff did not have notice of Defendants' intent to raise the affirmative defense until after the close of fact discovery. Plaintiff is prejudiced by the inability to conduct discovery on the

defense. Accordingly, it has been waived. *Renfro v. City of Emporia, Kansas*, 984 F.2d 1529, 1539-40 (10th Cir. 1991) (holding that a defendant waived the affirmative defense of an exemption under the FLSA where it was not raised until after an order had been entered in favor of Plaintiff/employees on a motion for summary judgment).

Rather than striking the materials submitted in support of the affirmative defense, some of which may be relative to the administrative employee defense, the court will, instead, hold that the professional employee defense is waived and may not be raised at trial.

However, as discussed above, the issue of whether or not the employee is "engaged in commerce" is not an affirmative defense. Instead, it is an element of a claim under the FLSA. Because it is not an affirmative defense, it was not required to be pleaded under Fed. R. Civ. P. 8(c).

Plaintiff's second Motion to Strike, filed on February 14, 2005, seeks to exclude the second affidavit of the individual Defendant (Second Giblette Affidavit). It was filed together with Defendants' Reply Memorandum in support of their Motion for Summary Judgment. Plaintiff contends that the local rule of practice, DUCivP 56-1(b), does not permit the filing of affidavits with the movants' Reply Memorandum.

The court finds that the filing of the Second Giblette Affidavit is not clearly prohibited by the local rules. Therefore, the court will deny Plaintiff's second Motion to Strike.

## IV.  ORDER

Based upon the foregoing, it is therefore

ORDERED that Defendants' Motion for Summary Judgment [Docket No. 29] is GRANTED, in part. It is further

ORDERED that Defendants are granted summary judgment on the issue that they are not an enterprise engaged in commerce. It is further

ORDERED that Defendants' Motion for Summary Judgment [Docket No. 29] is otherwise DENIED. It is further

ORDERED that Plaintiff's Motion for Partial Summary Judgment [Docket No. 32] is DENIED. It is further

ORDERED that Plaintiff's Motion to Strike [Docket No. 36] is DENIED.

ORDERED that Defendants waived the affirmative defense under 29 U.S.C. § 213(a)(1) that Plaintiff is a bona fide professional employee and it may not be raised at trial. It is further

ORDERED that Plaintiff's Motion to Strike [Docket No. 46] is DENIED. It is further

ORDERED that the court will set this case for a two day bench trial.

DATED August 5, 2005.

BY THE COURT:

_____
TED STEWART
United States District Judge